Bernes O. Norton, Administrator of the Estate of
Alma E. Bradbury

*vs.*

Henry Smith.

Waldo.        Opinion May 14, 1930.

*Clyde R. Chapman,*
*McLean, Fogg & Southard,* for plaintiff.
*Buzzell & Thornton,*
*Hinckley, Hinckley & Shesong,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, JJ. MORRILL, A. R. J.

FARRINGTON, J. This was an action of assumpsit. The writ contained five counts with only two of which, the fourth and the fifth (the latter declaring on a lost note), are we concerned.

By agreement and stipulation of record "the note declared on in said counts is due and payable in the sum of thirteen thousand five hundred dollars, fifteen hundred dollars having been paid thereon, unless in the lifetime of the said Alma E. Bradbury she forgave the said defendant said note and discharged the same by intentionally destroying it, and that the only issue is whether or not the said Alma E. Bradbury did during her lifetime forgive said note or discharge said note by intentionally destroying the same." On this issue the case was tried and the jury rendered a verdict for the defendant.

The case is before this court on general motion and on exceptions to the admission of certain evidence, to a refusal by the presiding Justice to charge as requested, and to the charge itself.

The death of Alma E. Bradbury occurred in May, 1926. The defendant was named as executor in the will and was appointed special administrator and as such took charge of the deceased's property, pending the time of his later appointment and qualification as executor.

It appears of record that on June 1, 1925, the defendant gave to the deceased, Alma E. Bradbury, a note for $15,000.00 on which, during her lifetime, he had made a payment of $1,500.00. In his brief statement the defendant sets up as a defense the claim that subsequently to this payment of $1,500.00 "the said Alma E. Bradbury in her lifetime forgave the said defendant said note and discharged said note by intentionally destroying the same," as noted in the stipulation and agreement above mentioned.

Sometime during the last of 1926, or the early part of 1927, there was a hearing on an account filed by the defendant as special administrator. On March 14, 1927, and March 21, 1927, hearings were held on petitions for the discovery of assets and for the removal of the defendant as special administrator and executor and after that there was a hearing on an appeal from the decree of the

Probate Court removing the defendant. At all of these hearings the defendant testified under oath. There was no stenographic record of the first hearing which related to the special administrator's account, but in all the other hearings there was such record.

The present action was brought after these hearings had been held. At the trial of the case the plaintiff, having offered the stipulation and agreement to which reference has been made, rested.

The first witness for the defendant was Ellen Smith, wife of the defendant, who was not permitted by the presiding Justice to testify to any conversation with the deceased in regard "to the forgiving, cancellation or destruction of the note." Then Rosanna B. Odiorne, an old friend of the deceased, testified that the latter told her that "when Henry (*the defendant*) went into business I loaned him some money for which he gave me his note, but before I came away I said to him, 'Child, I will never need that, and we are going to live together (referring to arrangements to live with defendant and his wife), and I want to destroy it.' We did destroy the note and that ended it." After cross examination by the plaintiff's attorney and re-direct by the defendant's attorney, Ellery Bowden, the Judge of Probate before whom the hearings had been held in the matters herein referred to involving the deceased's estate, was called by the plaintiff as a witness in rebuttal and was permitted to testify that, at the first hearing which related to the account of the special administrator and at which no stenographic record was made, the defendant said under oath that "he never gave Alma Bradbury any note." On cross examination this witness was permited by the presiding Justice to answer certain questions, among others, relating to the stenographic record of a hearing held before him on March 14, 1927, as follows, viz:

Q. "I am now about to examine on pages 25 and 26 of the record of that same hearing. I am reading from page 25 of the record of that same hearing. '*Question:* Do you recall stating in Court here last time, Mr. Smith, that Alma Bradbury never loaned you any money? *Answer:* I don't recall that I did. *Question:* How long after Mr. Bradbury died was it before this note was torn up? *Answer:* I wouldn't dare say. Maybe a week; not much more.' Do you remember that?"

A. "Why, I remember it in a general way."

Q. " 'Question: Anybody else there when the note was torn up? Answer: No, Sir. Question: Up to that time do you know whether she had kept it in her safe deposit box? Answer: No, Sir. Question: You don't know where she kept it? Answer: No.' Do you remember those questions and answers?"

A. "Yes, Sir."

Q. "They are correct as he gave them?"

A. "They are correct as he gave them; Yes, Sir."

Q. "I am now referring to page 37 of the same hearing. 'Question: Now, Mr. Smith, you state that your brother knew about the loan, but never knew about the notes being torn up. Did Mr. Ritchie know about the notes being destroyed? Answer: I don't know that I mentioned it until this action came up.' Is that correct?"

A. "I think so."

Q. "I am reading now from same hearing, page 45, as reported: 'Question: No one but you and Mrs. Bradbury present both times? Answer: No.' This is referring to the time when he says the note was destroyed. 'Question: It was prior to that time, in the lifetime of Alma Bradbury, that you and she tore. up the note? Answer: I didn't say I did. It was in my presence, and in the presence of no one else.' Do you remember that question and answer?"

A. "Yes, Sir, those were his answers."

Q. "I am referring now to copy of the report of evidence, page 62 of the same hearing, and I ask you if these questions and answers were made and given before you at that hearing. 'Question: And did she mention that when she gave you the note? Answer: Yes. Question: At the time she tore up the note what did she do with it? Answer: Put it in the kitchen stove. Question: Did she at that time remark that she was giving it to you? Answer: Exactly. Question: Did you accept it as a gift? Answer: I certainly did.' Were these questions and answers given before you at that hearing?"

A. "They were."

To the admission of all the testimony above quoted exceptions were seasonably taken, as well as to other similar testimony to which we do not feel it necessary to refer in detail.

What the defendant, Smith, at any time said in regard to borrowing money from the deceased, or the giving of a note, is not an issue. The only question is as to the discharge of a note, admittedly given on which a $1,500.00 payment had been made, and the bight of the matter is whether it was proper to admit any statement made at any time by Smith to the effect that he no longer owed anything because the note had been destroyed by the deceased in his presence. Smith could not have so testified in person on the stand because the destruction claimed was before the death of Mrs. Bradbury. The result of the admission of the testimony during the questioning of Mr. Bowden was not only to allow a self-serving statement to go to the jury, but its admission was equivalent to putting the defendant on the stand, as far as direct testimony was concerned, without affording any opportunity for cross examination. Citation of authority is not needed to establish the proposition that the statements were self-serving and wholly inadmissible.

The usual rule of exclusion in suits involving estates prevented the defendant from testifying as to the incident of the destruction of the note occurring before the death of Mrs. Bradbury. The door had not been opened by the plaintiff and the defendant should not have been permitted to put into the record by indirection and through a self-serving statement, that to which, under the well recognized rule, he could not have testified himself. The testimony was inadmissible. That it was most prejudicial can not be questioned. It gave opportunity for counsel for the defendant to argue to the jury that the story as told by Mrs. Odiorne was corroborated by this testimony which, to all intents and purposes, as far as the jury was concerned, was from lips which should have been sealed under the rule of exclusion.

The exceptions to the admission of this evidence must be sustained.

Further exceptions were seasonably reserved by the plaintiff as to the admission of certain other evidence and also to the refusal

of the presiding Justice to include in his charge a certain request of the plaintiff. There were also exceptions to the charge itself.

In view of our finding that the exceptions should be sustained as to the evidence hereinbefore recited, we do not feel that it is necessary to discuss the case with reference to the points covered by the other exceptions of the plaintiff.

For the same reason it would seem needless for this court to make comment on or reference to the general motion.

*Exceptions sustained.*